IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| U.S. HOME CORPORATION, | |
| Plaintiff/Counterdefendant, & | Miscellaneous Action No. _____ |
| LENNAR CORPORATION, | |
| Counterdefendant, | (This action is currently pending in the United States District Court for the District of Maryland as Case No. 8:08-cv-01863-PX) |
| v. | |
| SETTLERS CROSSING L.L.C. *et al.*, | |
| Defendants/Counterplaintiffs, & | |
| STEVEN B. SANDLER | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION TO QUASH SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

TABLE OF CONTENTS

Page

INTRODUCTION ......................................................................................................... 1

BACKGROUND ........................................................................................................... 3

ARGUMENT ................................................................................................................. 6

      I.     The Untimely Subpoenas Impose an Undue Burden on the Firms ........................ 6

            A.     The Untimely Subpoenas Seek Irrelevant Information ............................. 6

            B.     The Untimely Subpoenas Are Overbroad and Will Inevitably Result in Undue Expense to the Firms ...................................................... 10

            C.     The Information Sought Is Available from Lennar ................................. 11

      II.    The Demanded Discovery Seeks Privileged Information and Will Result in a Second Major Litigation ............................................................................. 12

CONCLUSION ............................................................................................................ 15

# TABLE OF AUTHORITIES

Page

<u>**CASES**</u>

*Ambling Management Company v. University View Partners LLC,*
    2010 WL 457508 (D. Md. Feb. 3, 2010) ................................................................ 7, 9, 12, 13

*Bank of Am. Corp. v. Centrify Corp.,*
    No. 3:11–MC–135, 2011 WL 5127741 (W.D.N.C. Oct. 28, 2011) ........................................ 12

*Bel Air Plaza Ltd. P'ship v. Ross Dress for Less, Inc.,*
    2016 WL 3440191 (D. Md. June 23, 2016) ............................................................................ 8

*Chaudhry v. Gallerizzo,*
    174 F.3d 394 (4th Cir. 1999) ................................................................................................ 12

*Clarke v. Am. Commerce Nat'l Bank,*
    974 F.2d 127 (9th Cir. 1992) ................................................................................................ 12

*Cong. Hotel Corp. v. Mervis Diamond Corp.,*
    200 Md. App. 489 (2011) ....................................................................................................... 8

*Developers Sur. & Indem. Co. v. Belcher,*
    2017 WL 896861 (D. Md. Mar. 7, 2017) ............................................................................... 8

*Friolo v. Frankel,*
    373 Md. 501 (2003) ............................................................................................................... 8

*Garvais v. Reliant Inventory Solutions Inc.,*
    2010 WL 4722260 (S.D. Ohio Nov. 15, 2010) .................................................................... 15

*Hall v. Sullivan,*
    231 F.R.D. 468 (D. Md. 2005) ............................................................................................. 11

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983) ............................................................................................................. 14

*Ideal Elec. Sec. Co. v. International Fidelity Ins. Co.,*
    129 F.3d 143 (D.C. Cir. 1997) ............................................................................................. 13

*In re Subpoena Duces Tecum Served on Duke Energy Corp.,*
    2005 WL 2674938 (W.D.N.C. Oct. 18, 2005) ..................................................................... 11

*In re Subpoena Duces Tecum to AOL, LLC,*
    550 F. Supp. 2d 606 (E.D. Va. 2008) .................................................................................. 10

*In re Subpoena of DJO, LLC,*
    295 F.R.D. 494 (S.D. Cal. 2014) ......................................................................................... 10

# TABLE OF AUTHORITIES
## (continued)

Page

*Johnson v. Sullivan,*
    1992 WL 510002 (D. Md. May 4, 1992)................................................................. 8

*Marks Constr. Co. v. Huntington Nat'l Bank,*
    2010 WL 1836785 (N.D.W. Va. May 5, 2010) .......................................... 7, 9, 14, 15

*Maxtena, Inc. v. Marks,*
    289 F.R.D. 427 (D. Md. 2012)................................................................................ 9

*McAfee v. Boczar,*
    738 F.3d 81 (4th Cir. 2013) .................................................................................... 8

*Mirabel v. GMAC,*
    576 F.2d 729 (7th Cir. 1978) .................................................................................. 7

*Moon v. SCP Pool Corp.,*
    232 F.R.D. 633 (C.D. Cal. 2005) .......................................................................... 12

*Nelson v. A & H Motors, Inc.,*
    2013 WL 388991 (D. Md. Jan. 30, 2013)............................................................. 6, 7

*Nidec Corp. v. Victor Co. of Japan,*
    249 F.R.D. 575 (N.D. Cal. 2007).......................................................................... 12

*Pamida v. E.S. Originals, Inc.,*
    281 F.3d 726 (8th Cir. 2001) ................................................................................ 13

*Saman v. LBDP, Inc.,*
    2013 WL 6410846 (D. Md. Dec. 6, 2013)............................................................ 6, 8

*Sirpal v. Fengrong Wang,*
    2012 WL 2880565 (D. Md. July 12, 2012)............................................................ 10

*U.S. Home Corporation v. Settlers Crossing, L.L.C. et al.,*
    No. 8:08-cv-1863-DKC (D. Md. Feb. 4, 2015) ............................................... passim

*Zhang v. GC Servs., LP,*
    537 F. Supp. 2d 805 (E.D. Va. 2008) ............................................................ 6, 9, 14

*Zoological Soc'y of Buffalo, Inc. v. Carvedrock, LLC,*
    No. 10-CV-35A, 2013 U.S. Dist. LEXIS 148340 (W.D.N.Y. Oct. 15, 2013)........ 12

## RULES

D. Md. L.R. 104(2) ..................................................................................................... 15

Fed. R. Civ. P. 16(b)(4)............................................................................................... 15

## TABLE OF AUTHORITIES
(continued)

|  | Page |
|---|---|
| Fed. R. Civ. P. 26(b)(2)(C)(i) | 11 |
| Fed. R. Civ. P. 45(d)(3)(iii) | 12 |

## INTRODUCTION

This Joint Motion to Quash relates to an action pending in the United States District Court for the District of Maryland, *U.S. Home Corporation v. Settlers Crossing, L.L.C. et al.*, No. 8:08-cv-1863-DKC (D. Md. Feb. 4, 2015) ("*Settlers Crossing*").   Nearly a year after filing its motion for attorneys' fees and over six months after filing its reply brief, iStar Financial Inc. ("iStar"), a party to the *Settlers Crossing* action, has served sweeping subpoenas on seven nonparty law firms (the "Firms") seeking intimate attorney-client information, including *all* billing records, for a span of *over ten years*.   iStar had an opportunity to present evidence and argument in support of its fee motion when it filed its memorandum a year ago.   That opportunity has long passed.   The nonparty Firms ask the Court to quash the Subpoenas because they are grossly untimely, seek privileged information that is irrelevant to the determination of iStar's request for attorneys' fees, and would impose a crushing and undue burden on nonparties to the *Settlers Crossing* action.

Both Maryland and Fourth Circuit courts consider several factors in determining the amount of a party's request for attorneys' fees.[1]   The amount the opposing party spent litigating the case is not one of them.   It is therefore irrelevant to the determination of the fee award.   In order to have any chance at discovering opposing counsel's billing records, the requesting party must demonstrate a "compelling explanation" of the relevance of those time sheets to its own fee request.

There is no basis, much less a compelling one, for iStar's request in this case.   As courts have found time and again, the losing party's billing records are irrelevant to the reasonableness

---

[1] This motion cites Maryland and Fourth Circuit authority because Maryland law governs the award of attorneys' fees in the *Settlers Crossing* case, and because the underlying litigation is pending in the District of Maryland and movants (and Lennar) may exercise the right to transfer this motion to the District of Maryland.

of the prevailing party's claimed fees.  Subjecting nonparty law firms to the expense and burden of redacting and producing their privileged billing records is the archetype of an undue burden. And iStar's subpoenas are wildly overbroad, covering *all* engagement letters, bills, invoices, records relating to payments received by the Firms, records relating to disputes over fees or costs, records relating to claims or demand letters between Lennar and the Firms, and bills and invoices for third parties (e.g., consulting and testifying experts) engaged in connection with the litigation—over a period of *ten years*.  No nonparty should be forced to endure such a burden so that iStar can try to establish a fact of no relevance to determining a potential future fee award.

On top of the fact that they seek irrelevant material and impose an undue burden on the seven nonparty subpoena recipients, iStar's subpoenas are also untimely.  iStar filed its final supplemental submission regarding appeal fees on January 5 of this year, and the district court has permitted it no additional briefing.  iStar's strategic decision not to seek this information at a time when it might have been of use to iStar was its own.  The Court should not reward iStar's gamesmanship by reopening discovery, reopening briefing, and dragging the nonparty law firms along with the parties into a second major litigation that could extend well into the next year.

Under Rule 45, the Court must quash a subpoena that "requires disclosure of privileged or other protected matter" or "subjects a person to an undue burden."  The Fourth Circuit regards as privileged the "correspondence, bills, ledgers, statements, and time records which ... reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of law."  The burden on the Firms to produce this information is not really subject to question, and the privileged nature of the material makes iStar's request all the more inappropriate.  The Firms therefore seek an order quashing the subpoenas on the grounds that they are untimely, seek irrelevant and privileged

information, and thereby impose an undue burden on nonparties.

## BACKGROUND

In 2005, Lennar's subsidiary, U.S. Home, and Settlers Crossing, L.L.C. entered into an agreement under which U.S. Home would purchase from Settlers Crossing approximately 1250 acres of land in Prince George's County, Maryland.  In the coming months and years, the parties to the agreement renegotiated, modified, and added to the terms of the agreement, including through an agreement pursuant to which iStar Financial loaned Settlers' Crossing money and assumed certain rights and obligations.  A dispute ensued and litigation commenced.

On January 22, 2015, the district court in Maryland entered judgment against U.S. Home and Lennar (collectively "Lennar") and in favor of iStar.  iStar gave notice that it intended to seek reimbursement of millions of dollars in legal expense incurred during the lawsuit.  In connection with that request, in March 2015, iStar served subpoenas on seven different law firms who represented Lennar in any capacity in connection with the Bevard property, whether litigation, transactional, or otherwise.  None of the Firms was or is a party to the *Settlers Crossing* litigation, and iStar never sought to obtain the information from Lennar.

In response to the 2015 subpoenas, the Firms jointly moved to quash on numerous grounds and, in September 2015, the Maryland district court, to which the joint motions had been transferred, granted the motion to quash.  The district court agreed with the Firms that the subpoenas were premature because Lennar had filed a notice of appeal and, therefore, it made sense to wait until the conclusion of the appeal to determine whether iStar was in fact the prevailing party and entitled to any reimbursement of legal expense at all.  ECF 774.[2]  The Firms also moved to quash the subpoenas on many of the grounds set forth in the instant motion.  The magistrate's order did "not address these grounds for challenge and such challenges [were] …

---

[2] Unless otherwise noted, all ECF references herein refer to the *Settlers Crossing* docket.

preserved for future motion practice." *Id.* at 3 n.3.

In 2017, the Fourth Circuit affirmed the Maryland district court's decision in favor of iStar in an unpublished, *per curiam* opinion. The Maryland Court then set a briefing schedule with respect to iStar's fee requests. ECF 785.

Though in quashing the 2015 subpoenas the magistrate noted "if this court's judgment is affirmed in full or in part, iStar may re-serve each law firm with a subpoena seeking the same information," ECF 774 at 3, and although iStar had every opportunity after the judgment was affirmed in 2017 to seek the discovery from Lennar or re-serve the 2015 subpoenas, iStar chose not to do so. This is so despite the fact that iStar, in opposing the 2015 motion to quash, referred to the Firms' records as "records it *needs* to support the amounts sought in its Motion for Fees." ECF 772 at 7 (emphasis altered). Whether it was acquiescence in Lennar's arguments that the materials were not relevant, privileged, and burdensome to collect, or because iStar preferred a different strategic path, it is undisputed that iStar made the calculated decision to file its request for fees on July 17, 2017 *without* re-serving the subpoenas on the seven non-party firms, *without* serving a subpoena on Lennar, and *without* even asking informally for the materials. ECF 787. iStar also made the calculated decision to submit its billing records to the district court in support of its motion, but to withhold those billing records from Lennar, denying Lennar the opportunity to see the evidence presented against it. *Id.* at 6, n.4.

Lennar opposed the request on August 31, 2017. ECF 790. In opposition, Lennar argued, among other things, that iStar's request was unreasonably high because iStar used too many lawyers, their rates were not consistent with lawyers in the jurisdiction, and those lawyers spent unreasonable amounts of time on their tasks (such as an average of 125 hours of preparation for each deposition). Lennar also objected to iStar's refusal to produce its billing

records and its attempt to support its fee petition entirely with "secret evidence." *Id.*

iStar filed its reply on October 2, 2018, ECF 793, and a supplemental request for fees incurred defending against Lennar's petition for a writ of *certiorari* on January 5, 2018, ECF 796. Yet again, iStar made no effort to subpoena the seven non-party firms or Lennar, and made no effort to obtain Lennar's fee information it now demands through subpoena.

In response to iStar's request and Lennar's objections, the *Settlers Crossing* magistrate judge held a hearing on April 19, 2018. The primary focus of the hearing was iStar's refusal to permit Lennar access to the evidence offered in support of its fee petition. Having taken the matter under advisement, on June 22, 2018, the magistrate judge ordered iStar to produce all evidence submitted in support of its fee petition, including its billing records, to Lennar, noting Lennar cannot "meaningfully challenge the reasonableness of the petitions without being able to review all of the documents." ECF 802 at 2. At no point did the magistrate judge give iStar any opportunity to submit new evidence or briefing in support of its fee petition. *Id.*

iStar did not seek reconsideration or ask for leave to supplement the record with any additional information, such as information about Lennar's counsel's fees. Instead, in violation of the schedule set forth by the Court, on or around July 5, 2018, iStar served the same seven non-party firms with sweeping subpoenas seeking more than a *decade's* worth of engagement letters, billing arrangements, invoices, costs, correspondence, and vendor charges. To put the timing in context, July 5, 2018 was:

- **40 months** after the 2015 subpoenas,
- **15 months** after the Fourth Circuit's decision,
- **13 months** after the Maryland Court set briefing on iStar's fee request,
- **12 months** after iStar submitted its fee request, and

- **3 months** after the hearing before Magistrate Simms.

In a move of sheer gamesmanship and unexcused delay, iStar now seeks to saddle seven nonparty law firms with the burden of locating, reviewing, and redacting nearly ten years' worth of intimate, confidential, attorney-client privileged information that is utterly irrelevant to iStar's motion.

## ARGUMENT

## I.     The Untimely Subpoenas Impose an Undue Burden on the Firms

iStar is not entitled to the discovery it seeks.  Through seven sweeping Subpoenas to seven nonparty law firms, iStar seeks extraordinary discovery that courts in the district where the action is pending have time and again found irrelevant and unnecessary.  Discovery of any kind for fees motions is rarely allowed, *Zhang v. GC Servs., LP*, 537 F. Supp. 2d 805, 809 (E.D. Va. 2008), but discovery of the opposing party's billing and related records is particularly inappropriate, because those records are irrelevant to the question of the moving party's reasonable attorneys' fees, *see, e.g.*, *Nelson v. A & H Motors, Inc.*, 2013 WL 388991, at *2 n.4 (D. Md. Jan. 30, 2013); *Saman v. LBDP, Inc.*, 2013 WL 6410846, at *8 (D. Md. Dec. 6, 2013). And the inappropriateness of iStar's extraordinary discovery requests is further underscored by the fact that iStar has already been given a full opportunity to present evidence in support of its fee petition, yet deliberately chose not to seek this information until its time to submit new evidence and briefing had passed.  The Court should not reward iStar's wasteful gamesmanship.

### A.     The Untimely Subpoenas Seek Irrelevant Information

iStar's Subpoenas must be quashed because they seek irrelevant documents.  iStar's billing records—*not* Lennar's—are relevant to iStar's motion for attorneys' fees.  In determining an award of attorneys' fees in contract cases governed by Maryland law, the Court applies the factors laid out in Maryland Rule of Professional Conduct 1.5(a):

> (1) the time and labor required, the novelty and difficulty of the
> questions involved, and the skill requisite to perform the legal
> service properly; (2) the likelihood, if apparent to the client, that
> the acceptance of the particular employment will preclude other
> employment of the attorney; (3) the fee customarily charged in the
> locality for similar legal services; (4) the amount involved and the
> results obtained; (5) the time limitations imposed by the client or
> by the circumstances; (6) the nature and length of the professional
> relationship with the client; (7) the experience, reputation, and
> ability of the attorney or attorneys performing the services; and (8)
> whether the fee is fixed or contingent.

None of these factors "call[s] for the Court to conduct a comparison analysis of the fees charged
by the losing party in order to determine whether the fees claimed by the winning party are
appropriate." *Marks Constr. Co. v. Huntington Nat'l Bank*, 2010 WL 1836785, *4 (N.D.W. Va.
May 5, 2010).

Courts in the District of Maryland, where the underlying action is pending, routinely hold
that the losing party's fees are irrelevant to determining the reasonableness of the prevailing
party's fees. In *Nelson v. A & H Motors, Inc.*, 2013 WL 388991 (D. Md. Jan. 30, 2013), as here,
the plaintiff sought to require defense counsel to produce his billing records. *Id.* at *2 n.4. The
district court denied the motion, holding "[t]he amount of fees incurred by the opposing party is
not relevant to these factors and will not be considered." *Id.* In *Ambling Management Company
v. University View Partners LLC*, 2010 WL 457508 (D. Md. Feb. 3, 2010), the district court
found that, even after the plaintiff narrowed the scope of its discovery requests, the extraordinary
discovery of defense counsel's billing records was still inappropriate because there was no
"compelling reason why discovery of [the losing party's] fees is relevant." *Id.* at *2; *see also id*
n.5 ("[T]he amount of fees which one side is paid by its client is a matter involving various
motivations in an on-going attorney-client relationship and may, therefore, have little relevance
to the value which petitioner has provided to his clients in a given case." (quoting *Mirabel v.
GMAC*, 576 F.2d 729, 731 (7th Cir. 1978))). In *Saman v. LBDP, Inc.*, 2013 WL 6410846 (D.

Md. Dec. 6, 2013), the *defendant* tried to offer evidence of its own fees as evidence that plaintiff's claimed fees were unreasonable. *Id.* at *8 & n.14. As Judge Chasanow held, "[t]o the extent Defendants wish to use their fees incurred as a tool of comparison, they will not be considered as *it is not relevant to an examination of an opposing party's fee request.*" *Id.* at *8 n.14 (emphasis added). And in *Johnson v. Sullivan*, 1992 WL 510002 (D. Md. May 4, 1992), the plaintiff moved to reopen the case for the limited purpose of discovering the hours expended by defense counsel for use in relation to her fee petition. *Id.* at *12. The district court denied the motion, holding "the Court does not consider the number of hours expended by *defense* counsel to be relevant to any issue before the Court." *Id.*

These cases apply the lodestar methodology, rather than the factors set forth in MRPC 1.5(a). "Cases applying the traditional lodestar analysis are instructive, however, because many of the applicable factors are also found in Rule 1.5." *Developers Sur. & Indem. Co. v. Belcher*, 2017 WL 896861, at *9 n.10 (D. Md. Mar. 7, 2017); *Bel Air Plaza Ltd. P'ship v. Ross Dress for Less, Inc.*, 2016 WL 3440191, at *1 n.4 (D. Md. June 23, 2016). In fact. "the factors in Rule 1.5 are 'identical or similar' to the factors in the lodestar method." *Cong. Hotel Corp. v. Mervis Diamond Corp.*, 200 Md. App. 489, 505 (2011) (quoting *Friolo v. Frankel*, 373 Md. 501, 527 (2003)).[3] The only factor considered in Maryland contract cases that is not explicitly included in

---

[3] The factors considered in the lodestar analysis, as characterized by the Fourth Circuit (the "*Barber* factors"), are: "(1) The time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases." *McAfee v. Boczar*, 738 F.3d 81, 88 n.5 (4th Cir. 2013). Of the eight factors in MRPC 1.5(a),

the lodestar analysis is MRPC 1.5(a)(8): whether the fee is fixed or contingent. Nothing about this factor requires or even invites the Court to consider the *opposing* party's fees.

There is no need to chart a new course when iStar has always had all of the information it needs to support its claim for attorneys' fees under Maryland law.

Moreover, more than one firm performed work for Lennar entirely unrelated to the underlying litigation. Rosenberg Martin Greenberg, LLP performed transactional services only in connection with the subject matter of this case. (Decl. of Barry C. Greenberg.) Greenberg Traurig performed litigation work for Lennar, but only in a *separate* action in the Eastern District of Virginia. (Decl. of Brent H. Allen.) Neither firm represented Lennar in this litigation. There is no conceivable connection between these records and the issue of iStar's litigation expenses.

Because iStar's Subpoenas seek irrelevant information, the substantial burden they impose on the Firms is necessarily an "undue burden." In determining whether a subpoena imposes an undue burden, the Court must consider "whether the information is necessary." *Maxtena, Inc. v. Marks*, 289 F.R.D. 427, 439 (D. Md. 2012). Absent a compelling explanation of the relevance of the other party's billing records, such records are not discoverable: "When a plaintiff fails to provide a 'compelling explanation of the relevance of defense counsel's time sheets,' courts in [the Fourth C]ircuit have rejected a plaintiff's attempt 'to shift the burden to the [d]efendant of proving the reasonableness of their efforts.'" *Ambling Mgmt. Co.*, 2010 WL 457508, at *2 (quoting *Zhang*, 537 F. Supp. 2d at 809); *see also Marks Constr. Co.*, 2010 WL 1836785, at *5 (quoting same). "Such production would be of marginal assistance to the Court, at best, while placing an undue burden on the defense." *Zhang*, 537 F. Supp. 2d at 809. iStar cannot shift the burden by making Lennar defend the reasonableness of its own fees, because

---

factors (1) through (7) are substantively identical to factors (1), (2), (3), (4), (5), (7), (8), (9), and (11) of the *Barber* factors.

only iStar's fees are relevant to its motion.

Unless the Maryland district court feels it *cannot* assess the reasonableness of iStar's fee request without doubling the amount of material it must consider, extending briefing into 2019, and inviting a full-scale battle of experts with regard to the reasonableness of no fewer than nine law firms' billing practices, there is no basis whatsoever—much less a "compelling" reason—to permit iStar's extraordinary discovery of irrelevant materials.

**B.     The Untimely Subpoenas Are Overbroad and Will Inevitably Result in Undue Expense to the Firms**

iStar's Subpoenas must be quashed because they are wildly overbroad.  From each of the seven Firms, iStar seeks potentially thousands upon thousands of documents covering over ten years, including:

- *All* engagement letters, bills, and/or invoices;

- *All* records relating to (i) payments received by the Firms, (ii) disputes over fees or costs, or (iii) claims or demand letters between Lennar and the Firms; and

- *All* bills and invoices for third parties (*e.g.*, consulting and testifying experts) engaged in connection with the litigation.

(Ex. 1, Notice of Subpoenas.)  "A subpoena imposes an undue burden on a party when a subpoena is overbroad."  *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 612 (E.D. Va. 2008).  Not only is a subpoena overbroad *per se* when it does not limit the request to relevant matters, *Sirpal v. Fengrong Wang*, 2012 WL 2880565, *5 (D. Md. July 12, 2012), but a request is overbroad even when it calls for confidential information for which the propounding party has not shown a "substantial need," *In re Subpoena of DJO, LLC*, 295 F.R.D. 494, 498 (S.D. Cal. 2014).  Not only does iStar seek to saddle *seven law firms* with the cost of locating, reviewing, preparing, and turning over confidential billing records covering *over ten years*—it

seeks to do so despite the fact that it simply has no need, much less any substantial need, for this information.  Nor would iStar have any use for the documents at any rate, because iStar's opportunity to present evidence and briefing in support of its motion has passed.

Complying with iStar's overbroad Subpoenas will cost the Firms greatly in terms of both time and money.  (Decl. of Linda S. Woolf; Decl. of David Barger; Decl. of Joseph A. Fischetti; Decl. of David Roberts; Decl. of Barry C. Greenberg; Decl. of Louis J. Rouleau.)  Imposing significant expense on a nonparty constitutes an undue financial burden.  *See In re Subpoena Duces Tecum Served on Duke Energy Corp.*, 2005 WL 2674938, *7 (W.D.N.C. Oct. 18, 2005). The impropriety of imposing an undue financial burden on a nonparty is heightened where, as here, the subpoena is overbroad and seeks materials for which there is neither a substantial need nor any practical use to iStar given that the motion has been fully briefed.

C.      **The Information Sought Is Available from Lennar**

If the Court finds that the requests are not untimely and that iStar has presented a compelling justification for the discovery of the records, the Firms still ask that the Court quash the Subpoenas because *all of Lennar's attorney billing records are available from Lennar*.  The Firms made this precise argument in 2015, yet iStar has chosen to ignore it and instead pursue a tactic of annoyance, burden, and harassment against the Firms.

The Court *must* limit discovery where the discovery sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive."  Fed. R. Civ. P. 26(b)(2)(C)(i).  A subpoena creates an impermissible undue burden where it seeks information from a nonparty that is available from a party.  *See Hall v. Sullivan*, 231 F.R.D. 468, 475 (D. Md. 2005) (even where documents are relevant, under Rule 26(b)(2)(C)(i) discovery method should be limited when same information is available from another source that "is more convenient, less burdensome, [and] less expensive"); *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577

(N.D. Cal. 2007) ("There is simply no reason to burden nonparties when the documents sought are in possession of the [other] party...."); *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 638 (C.D. Cal. 2005) (holding where discovery was not first sought from opposing party, requiring nonparty to produce documents created an undue burden); *Bank of Am. Corp. v. Centrify Corp.*, No. 3:11–MC–135, 2011 WL 5127741, *2-*3 (W.D.N.C. Oct. 28, 2011); *Zoological Soc'y of Buffalo, Inc. v. Carvedrock, LLC*, No. 10-CV-35A, 2013 U.S. Dist. LEXIS 148340, *8-9 (W.D.N.Y. Oct. 15, 2013). iStar made no attempt to obtain these records from Lennar before burdening each of the seven Firms with unduly broad discovery demands. iStar cannot heap an undue burden on seven nonparties seeking irrelevant information it could obtain from another, more appropriate source.

## II.   The Demanded Discovery Seeks Privileged Information and Will Result in a Second Major Litigation

The Court must quash the Subpoenas because they call for almost entirely privileged information. Fed. R. Civ. P. 45(d)(3)(iii). iStar's untimely, overly broad subpoenas call, without limitation or qualification, for materials protected by the attorney-client and work product privilege. iStar further seeks all of the Firms' invoices and billing records related to third parties engaged in connection with the litigation, such as consulting and testifying experts. Attorney-client privilege prohibits disclosure of "correspondence, bills, ledgers, statements, and time records which also reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of law." *Chaudhry v. Gallerizzo*, 174 F.3d 394, 402 (4th Cir. 1999) (quoting *Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127 (9th Cir. 1992)); *see also Ambling Mgmt. Co.*, 2010 WL 457508, *2 (upholding magistrate's refusal to permit discovery of billing records as a violation of work product protection).

The Firms' billing records contain detailed descriptions of the work performed on behalf of Lennar and number of person-hours devoted to each specific task. These records reflect the mental impressions of the attorneys and the litigation strategy developed between the attorneys and Lennar at each stage of this lengthy litigation.[4]  While the magistrate judge in Maryland district court has ordered iStar to produce its own billing records, with appropriate redactions, this is only because *iStar has put those records at issue* by requesting fees, and the law compels that Lennar is "entitled to review all of the documents submitted by [iStar]" in conjunction with its fee motion. *Settlers Crossing*, ECF No. 802, at 2; *see Ambling Mgmt. Co.*, 2010 WL 457508, at *2 (noting that "[t]he reasonableness of [the moving party's] attorneys' fees—not [the responding party's]—are at issue" in a fee dispute); *see also Ideal Elec. Sec. Co. v. International Fidelity Ins. Co.*, 129 F.3d 143, 152 (D.C. Cir. 1997) ("By claiming indemnification of attorneys' fees from Ideal and offering the billing statements as evidence of the same, IFIC waived its attorney-client privilege with respect to the redacted portions of the billing statements and any other communications going to the reasonableness of the fee award."); *Pamida v. E.S. Originals, Inc.*, 281 F.3d 726, 732 (8th Cir. 2001) (holding that where party sought to recover $1.2 million of which $750,000 was attorneys' fees, it placed the work of its attorneys at issue thereby waiving work product privilege). Lennar, to the contrary, has done nothing to put its own fees at issue. Lennar's fees are irrelevant to iStar's request, and thus nothing weighs in favor of disclosing this sensitive information.

Furthermore, Maryland Rule of Professional Conduct 1.6 prohibits the Firms from

---

[4] The only records that do not necessarily reflect the firms' mental impressions in this particular litigation are those records for work not performed for the purposes of this litigation—the transactional work of Rosenberg Martin Greenberg LLP and the unrelated litigation work of Greenberg Traurig, LLP.  These records are not only privileged, but also have no conceivable connection to iStar's fees motion.

disclosing the requested documents.  The Rule provides in relevant part: "A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation ...."  Lennar has not consented to the disclosure of the requested documents, but instead objects vehemently to any such disclosure.

The only means by which to address the privilege issue—through reviewing and redacting thousands upon thousands of pages of billing records, and submitting those records to the district court for *in camera* review—only underscores the undue burden the Subpoenas impose and the fact that they will usher in "a second major litigation of the type frowned on by the United States Supreme Court." *Marks Constr. Co.*, 2010 WL 1836785, at *6; *see Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation.").  In fact, iStar seeks to impose on the Firms a burden it would not itself assume.  "iStar chose not to redact its [billing records] as such a task would require a herculean effort under the Court's timeframe." ECF 817 at 2.  First, iStar casually ignores the fact it has had *years* to perform such redactions.  Even more audacious, iStar shamelessly demands that the Firms do, in the span of 17 days or less, precisely what iStar could not bother itself to do.

iStar's untimely, overbroad Subpoenas seeking irrelevant document will drag the parties, and all seven nonparty firms along with them, into just such a "second major litigation." Permitting iStar to discover the Firms' billing records "would require re-opening of discovery." *Marks Constr. Co.*, 2010 WL 1836785, at *6; *see also Zhang*, 537 F. Supp. 2d at 809 (holding that if party seeking fees "were to conduct additional discovery on their fee motion, it would be necessary for them to first petition the Court to reopen discovery so that the Court could properly monitor the situation"); *Garvais v. Reliant Inventory Solutions Inc.*, 2010 WL 4722260, *2 n.4

(S.D. Ohio Nov. 15, 2010) (even where events giving rise to desire for new discovery occur after discovery cutoff, a party must obtain leave of court to reopen); Fed. R. Civ. P. 16(b)(4) (discovery scheduling order "may be modified only for good cause and with the judge's consent"); D. Md. L.R. 104(2) (discovery must be completed by deadline unless otherwise ordered by the Court). This extraordinary discovery "would require some determination of the issues raised by" Lennar and the Firms "relative to attorney client privilege and opinion work product privilege." *Marks Constr. Co.*, 2010 WL 1836785, at \*6. "It would require a determination through *en camera* review whether redactions proposed protected appropriately claimed privileges while still providing the information required by the subpoena *duces tecum*. These inquiries and determinations are the start of a second major litigation of the type frowned on by the United States Supreme Court in *Hensley*...." *Id.*

## CONCLUSION

For the foregoing reasons, the Court should quash the Subpoenas served on the Firms by iStar as untimely and unduly burdensome, and because they seek patently irrelevant and otherwise privileged information.

Dated: July 20, 2018

GOODELL, DEVRIES, LEECH &
DANN, LLP

By: _____

Linda S. Woolf (Federal Bar No. 08424)
Joseph B. Wolf (Federal Bar No. 27882)
Goodell, DeVries, Leech & Dann, LLP
One South Street, 20th Floor
Baltimore, Maryland  21202
Telephone:  (410) 783-4000
Facsimile:  (410) 783-4040

Dated: July 18, 2018                    GREENBERG TRAURIG, LLP

                                        By: _____

                                        David G. Barger (DC Bar No. 469095)
                                        bargerd@gtlaw.com
                                        Greenberg Traurig, LLP
                                        1750 Tysons Boulevard
                                        Suite 1000
                                        McLean, VA 22102
                                        TEL: (703)749-1307
                                        FAX: (703) 714-8307

Dated: July 20, 2018                    LOWENSTEIN SANDLER LLP

                                        By: _____

                                        Leiv Blad (DC Bar No. 434450)
                                          lblad@lowenstein.com
                                        2200 Pennsylvania Avenue, NW
                                        Washington, DC 20037
                                        Telephone:  (202) 753-3800
                                        Facsimile:  (202) 753-3838

Dated: July 20, 2018                          O'MELVENY & MYERS LLP

                                              By: _____
                                                   Kevin Feder

                                              Daniel M. Petrocelli
                                                dpetrocelli@omm.com
                                              David Marroso
                                                dmarroso@omm.com
                                              1999 Avenue of the Stars
                                              Los Angeles, California  90067-6035
                                              Telephone:   (310) 553-6700
                                              Facsimile:   (310) 246-6779

                                              Kevin Feder (D.C. Bar No. 986131)
                                                kfeder@omm.com
                                              1625 Eye St. N.W.
                                              Washington, D.C. 20006
                                              Telephone:   (202) 383-5300
                                              Facsimile:   (202) 383-5414

Dated: July 20, 2018                    ROSENBERG MARTIN GREENBERG, LLP

                                        By: _____

                                        Louis J. Ebert (D.C. Bar No. 9893)
                                         lebert@rosenbergmartin.com
                                        25 South Charles Street, 21st Floor
                                        Baltimore, Maryland 21201
                                        Telephone:  (410) 727-6600
                                        Facsimile:   (410) 727-1115

Dated: July 19, 2018                 WOMBLE BOND DICKINSON (US) LLP

                                     By: _____

                                     Louis J. Rouleau (DC Bar No. 471654)
                                        louis.rouleau@wbs-us.com
                                     Womble Bond Dickinson (US) LLP
                                     1200 Nineteenth Street, N.W.
                                     Suite 500
                                     Telephone:   (202) 857-4558
                                     Facsimile:   (202) 261-0023